UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

PEGGY SUZANNE POWELL     CIVIL ACTION NO. 07-cv-0483

VERSUS     JUDGE WALTER

SCOTTY HILL     MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Peggy Powell ("Plaintiff") filed this 42 U.S.C. § 1983 action against Scotty Hill, an investigator with the Louisiana Livestock Brand Commission. Plaintiff alleged that Hill, without probable cause, arrested her for livestock theft. Defendant responded to the complaint with a motion to dismiss for lack of subject matter jurisdiction, a motion to dismiss based on qualified immunity, and (later) a motion for summary judgment. All of Defendant's motions were denied. Plaintiff filed some motions in limine, a motion to compel, and a motion to strike, on which she was generally successful. Plaintiff filed a motion for partial summary judgment that was denied.

A two-day trial was held. The jury returned a verdict that Defendant had arrested Plaintiff without authority and without a reasonable belief that his actions were proper. The jury awarded $250,000 in compensatory damages and, based on the finding that Defendant acted with malice or willfulness or callous and reckless indifference to Plaintiff's rights, awarded an additional $250,000 in punitive damages.

Defendant filed a notice of appeal. Plaintiff swiftly filed a motion for judgment debtor examination, sought a bond for costs on appeal, and proposed to serve garnishment interrogatories. Defendant filed a motion to stay enforcement of the judgment. The parties sparred over the adequacy of the security that Defendant proposed, with Defendant ultimately agreeing to post a cash deposit of $625,000 to secure the $500,000 judgment.

Plaintiff filed a Motion for Attorney Fees (Doc. 84) that is now before the court. Plaintiff has also submitted a Reply Memorandum (Doc. 95) and Supplemental Memorandum (Doc. 120) that request additional fees incurred filing the reply memorandum on the fee issue, opposing a motion for new trial, and addressing the issues related to security and a stay of the judgment. The total fees and costs sought are $166,977.50.

**Entitlement to Fee Award**

**A. Introduction**

Congress has provided that in any action to enforce a provision of Section 1983 the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs. 42 U.S.C. § 1988. The Supreme Court employs a generous formulation of the prevailing party term. A plaintiff may be considered a prevailing party if she succeeds on any significant issue in the litigation which achieves some of the benefit she sought in bringing suit. Farrar v. Hobby, 113 S.Ct. 566, 572 (1992); Hensley v. Eckerhart, 103 S.Ct. 1933, 1939 (1983).

Defendant states in his memorandum that, to this point in the litigation, he cannot dispute that Plaintiff is the prevailing party. But Defendant suggests that special circumstances nonetheless warrant outright denial of any attorney fee award.

**B. Size of Jury Award**

Defendant first notes that one purpose of the fee shifting statute is to ensure that the victims of civil rights violations have effective access to counsel and the courts. The cases are often difficult and expensive to litigate, and the awards alone are often insufficient to attract counsel. The fee statute encourages counsel to take such cases, and a plaintiff may be entitled to fees as a prevailing party even if only nominal damages are awarded. Farrar, 113 S.Ct. at 573.

Defendant argues that a statutory fee should be denied the prevailing party in this case because the jury's $500,000 award is adequate to compensate counsel and still result in a substantial recovery for Plaintiff. Defendant cites no authority for the novel proposition that a plaintiff who is particularly successful should be punished by denial of fees. Courts have recognized that the degree of a plaintiff's overall success goes to the reasonableness of a fee award, and the degree of success obtained is said to be the "most critical factor" in determining the reasonableness of the award. Farrar, 113 S.Ct. at 574, citing Hensley, 103 S.Ct. at 1941. This rule is sometimes invoked to justify the reduction or even elimination of a fee for a plaintiff who has *not* obtained much success, such as the denial of fees to the Plaintiff in Farrar who obtained only nominal damages. Defendant cites no authority for his

suggestion that the rule should also eliminate fees at the other end of the spectrum when the plaintiff's counsel has obtained an excellent result. The only counsel who would obtain fee awards under that rule would be those who obtained only mediocre results, and that surely was not the intent of Congress.

**C. State Law Cap on Liability**

The second special circumstance cited by Defendant for declining a fee award invokes the Louisiana Governmental Claims Act. La. R.S. 13:5101, et seq. Defendant argues that the Act is applicable in this case and would limit his liability to $500,000, which is the amount of the jury award. Plaintiff argues that the Act is inapplicable by its terms and that it is inapplicable because of the Supremacy Clause of the U.S. Constitution. This court need not interpret the state statutes because the Supremacy Clause argument is correct. State court limits and procedures on collection of judgments have posed no obstacle to the enforcement of judgments under civil rights statutes. See Gary W. v. State of La., 622 F.2d 804 (5th Cir. 1980) (federal court could order state official to pay judgment from state funds even though state constitution prohibited payment of judgment against the state except from funds appropriated by legislature); and Bradshaw v. School Board of Broward County, 486 F.3d 1205, 1209 (11th Cir. 2007) (where Tile VII authorized an award greater than state law caps on similar claims, the Supremacy Clause ensured that Florida could do nothing to limit the size and execution of the federal award). These decisions are consistent with Felder v. Casey, 108 S.Ct. 2302 (1988), which held that a state law pre-suit notice requirement

conflicted with the remedial objectives of Section 1983 so that the state law was preempted. The statutes cited by Defendant do not shield him from full liability under federal civil rights laws. If the law were otherwise, states could easily eviscerate Section 1983 and other civil rights laws. Plaintiff is entitled to a fee award.

**The Lodestar Fee**

    **A.    Introduction**

Once prevailing party status has been decided, the first step in calculating the fee award is to determine a lodestar fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. <u>Migis v. Pearle Vision, Inc.</u>, 135 F.3d 1041, 1047 (5th Cir. 1998). The party seeking the award should submit evidence supporting the hours worked and rates claimed. The court may reduce the lodestar award if the documentation of hours is inadequate or the billing attorney has not sufficiently excluded from the fee request hours that are excessive, redundant, or otherwise unnecessary. <u>Hensley</u>, 103 S.Ct. at 1939-40.

    **B.    Hourly Rate**

Reasonable fees are to be calculated according to the prevailing market rates in the relevant community. <u>Blum v. Stenson</u>, 104 S.Ct. 1541 (1984). The appropriate hourly rate is not that which "lions at the bar may command" but a rate that is adequate to attract competent counsel. <u>Leroy v. City of Houston</u>, 906 F.2d 1068, 1079 (5th Cir. 1990).

Plaintiff's counsel, J. Todd Benson, testifies that he has an outstanding academic background, clerked for a Justice of the Supreme Court of Louisiana, and has been admitted to the Louisiana Bar since 1995. Aside from several months when he served as general counsel for a corporation, Benson has been in private practice and primarily involved in litigation in state and federal courts. He has tried jury trials in federal courts in three states, and both bench and jury trials in state courts. He has also handled appellate work in the state and federal courts. Mr. Benson testifies that $250 per hour is his standard rate for complex litigation, such as this matter.

Co-counsel Bryce Denny became involved in the case shortly before trial and participated in the trial. Mr. Denny testifies that he was admitted to the Texas Bar in 1983 and the Louisiana Bar in 1994. Most of his career has involved litigation in the state and federal courts, and he has tried cases and argued appeals in several jurisdictions. Mr. Denny testifies that $250 per hour is also his standard rate for complex litigation.

Defendant does not object to $250 per hour for Mr. Denny, but he suggests that a more reasonable rate for Mr. Benson would be $175 per hour. The undersigned's last extensive review of the hourly rate for statutory attorney fee awards in the Shreveport area was conducted in November 2005 in Johnson v. Stalder, 03-cv-1949. The experienced civil rights litigator in that case, admitted to the bar in 1978, testified that her fees ranged from $150 to $200 per hour for civil rights cases in federal courts. She asked for a rate of $225 per hour in Johnson, and she submitted affidavits from local attorneys John Settle and

Kimberly Smith, both of whom testified that the range of hourly rates for attorneys in this area with over 25 years of experience was from $200 to $250 an hour.

The undersigned noted that there had been, up to that time, several awards of $150 per hour made in employment discrimination and civil rights cases litigated in the Shreveport Division. There had occasionally been greater awards when an applicant made a sufficient showing, but $175 per hour was the highest known rate awarded in this division. Judge James, in the Monroe Division, had recently approved a rate of $215 per hour for a Shreveport attorney (Allison Jones) with significant employment discrimination litigation who tried a jury trial in Monroe. See Robinson v. Ouachita Parish School Board, 03-cv-1374, Doc. 58.

The undersigned also looked to evidence recently assembled in a Shreveport case. The case eventually settled, but it generated significant evidence regarding the rates of attorneys in this area in 2005. John Odom, who has many years of experience litigating in Shreveport and in this court, testified that his knowledge and an informal poll of his colleagues led him to conclude that the general range of rates in commercial litigation in this area is $125 to $175 per hour for attorneys with 10-20 years of experience. The range increased to $150-$250 per hour for attorneys with 20 or more years of experience. Lifecare Hospitals, Inc. v. Shreveport Doctors Hospital, 2003 Ltd., 05 CV 553, Doc. 51-2, pp. 6-7. The party on the other side of that contest submitted affidavits from Shreveport attorneys Allyn Stroud and Gary Bowers. Mr. Stroud had 20 years of legal experience, and his

customary rate was $200 per hour. Mr. Bowers had 25 years of legal experience, and his customary rate was $250 per hour. See Doc. 43, Exhibits 10 and 11.

Both Plaintiff and Defendant have submitted affidavits regarding today's local hourly rates. Plaintiff submits in this case the affidavit of Allison Jones, an attorney since 1985, who testifies that her hourly rate is $250 and that it has been approved by several courts. No particular cases are cited. Jones adds that it is her belief that her rate is reasonable and within the range charged by members of the bar with comparable experience. She also testifies that $250 per hour is a reasonable rate for the work of Mr. Benson and Mr. Denny. Plaintiff also points to Judge Stagg's recent award of $250 per hour in a Shreveport employment discrimination case, which is relevant, but there was no opposition to the rate requested in that multi-plaintiff employment discrimination case that required two jury trials to resolve. See Abner v. Kansas City Southern Ry. Co., 2007 WL 1805782 (W.D. La. 2007), affirmed, --- F.3d ----, 2008 WL 3541109 (5th Cir. 2008).

Defendant submits the affidavit of attorney Fred H. Sutherland, who testifies that he has been admitted to practice since 1971 and has handled cases involving claims for discrimination and violations of civil rights. His current rate for representing a plaintiff in such a case is $225 per hour. Defendant also offers the affidavit of attorney H. Clay Walker who testifies that he has been licensed to practice in Louisiana state and federal courts since 1998 and has handled cases involving claims of civil rights. He states that his current hourly rate is $150 per hour.

Plaintiff's reply memorandum is accompanied by an affidavit from attorney Benson. He testifies that he spoke to Mr. Walker, who told Benson that he signed the affidavit at the request of a partner and did not even know the context in which the affidavit would be used. Mr. Walker is also quoted as saying that his hourly rate of $150 was too low and that he would raise it if he were not about to leave private practice. This testimony is hearsay, but it is included here for the sake of completeness.

The local practice has historically been to attempt to formulate an hourly rate for statutory fee cases that will fairly and reasonably compensates counsel in most cases, is adequate to attract competent counsel to handle such cases, and recognizes the economic risks and difficulties inherent in civil rights litigation for Louisiana attorneys who take civil rights cases on a contingency basis. That rate is then applied evenhandedly in the majority of cases in the Shreveport Division, with an occasional departure upward or downward for particularly inexperienced or experienced counsel, particularly difficult cases, cases that present unpopular causes, or if other extraordinary factors warrant doing so.

The last assessment of that rate in 2005 led to a determination that $200 per hour was fair compensation in <u>Johnson</u> (an ADA claim on behalf of a prisoner, which is a difficult case to win). That award was an increase from the previous typical rate of $150 to $175 per hour. The court has reviewed the evidence in this case, looked to its prior decisions, considered the impact of inflation on the local market, and considered the other rate-related factors discussed above. Based on those factors, the experience of counsel in this case, and the desire

for consistency to the extent it is reasonable to do so when determining a statutory fee, it is the considered opinion of the undersigned that the best exercise of this court's discretion is to calculate the lodestar based on a rate of $215 per hour for both Mr. Benson and Mr. Denny.

### C. Total Hours

Plaintiff's attorneys submit a total of 588.15 hours for services rendered through the filing of the fee motion. Defendant objects to the reasonableness of some of the time charged. For example, Defendant itemizes 13.4 hours that he contends Mr. Benson spent performing paralegal or clerical activities that should have been billed at a lower paralegal rate. Examples include filing the complaint, preparing service documents, reviewing court orders, calendaring relevant dates, and preparing trial subpoenas. Mr. Benson replies that he actually files his own motions and other submissions through the court's electronic filing system because he wants to make sure they are filed properly, with all proper attachments. That is an admirable trait, especially considering that the password and login for filing are equivalent to an attorney's signature under Rule 11. An attorney should not be penalized for personally attending to such matters, just as he should not be denied compensation for signing a pleading or motion with a pen and reviewing it to ensure that it is properly assembled. The same is true with respect to the other tasks, such as calendaring and the preparation of correspondence or service documents. Some attorneys delegate such tasks to staff, but many attorneys today operate with limited or no staff, and the court and clients

would be better served if more attorneys were personally involved in such matters. The number of hours at issue is not particularly large or unreasonable. The efforts are worthy of compensation.

Defendant also objects to charges of .2 and .3 of an hour for tasks such as receipt and review of notices or orders, contends that some of the time entries are incorrect, and suggests that some entries are excessive either on their face or because defense counsel billed less time related to the same event. Mr. Benson replies with an affidavit regarding the allegedly excessive entries and repeats his testimony that he actually worked the lengthy hours, especially approaching and during trial, detailed in his billing statements. He explains that he often worked a full day at the office, returned home at dinner and, after his family had gone to bed, continued working at night. That is evidenced by a 24-page memorandum in opposition to the motion for new trial that Benson researched, drafted, and filed in less than 24 hours from when Defendant filed the motion late one evening. Mr. Benson responds that his time entries for certain events, such as a deposition, are reasonably different from defense counsel's because of additional time he spent meeting with his client to discuss the depositions and their impact on the case.

Mr. Benson does not specifically respond to the suggestion of math errors in some of the time entries. The court notes that some entries include a number of tasks that are each assigned a unit of time, with a total number of hours listed for the day. The component tasks

sometimes add up to less than the total entry, but they are also sometimes greater than the daily entry.

Another issue that affects the number of compensable hours is whether counsel bears his burden of demonstrating and documenting the exercise of billing judgment. Saizan v. Delta Concrete Products Co., 448 F.3d 795, 799 (5th Cir. 2006). Billing judgment requires documentation of hours that are written off as unproductive, excessive, or redundant, just as counsel would do for a client who pays his fee at an hourly rate. Ideally, the fee application will show not only the hours that are claimed but also those that were written off based on the sound exercise of billing judgment. Id.; Alberti v. Klevenhagen, 896 F.2d 927, 930 (5th Cir. 1990). The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment. Walker v. U.S. Department of Housing and Urban Development, 99 F.3d 761, 770 (5th Cir. 1996).

The court notes that there is some evidence of billing judgment from Mr. Denny, who recorded time spent for some tasks such as reviewing email from co-counsel or conferring about strategy, but no charge was imposed. Mr. Benson's entries (which form the vast bulk of the time billed), however, do not include evidence of the exercise of billing judgment, which the Fifth Circuit deems important.

The fee motion contains a single bill that lists all hours billed by Mr. Denny and Mr. Benson, as well as several hours billed by a paralegal at $75 per hour. The bill totals all

hours, attorney and paralegal, without indication of who billed how many of the total hours, but it appears the paralegal hours total only about 10 hours or so. That results in about 578 attorney hours claimed through the fee motion. Plaintiff's reply memorandum included testimony from Mr. Benson that he spent another 25 hours working on the case since the fee motion was filed, and Plaintiff's supplemental memorandum claims an additional 62.5 hours of post-trial attorney time for Benson.

The time entries are of adequate detail, and the court does not doubt Mr. Benson's testimony that he worked long and hard hours in connection with this heavily contested litigation. There are, however, some math mistakes in the time entries, and there is an absence of direct evidence of the exercise of billing judgment in Mr. Benson's time entries. Under these circumstances, and considering the relevant Fifth Circuit precedents, the undersigned finds that the best exercise of the court's discretion as to how to address the two deficiencies is to discount the hours requested by 10%. Judge Stagg recently ordered a 10% reduction as a remedy in <u>Abner</u>, 2007 WL 1805782, *2, which is the same reduction the Fifth Circuit ordered in <u>Saizan</u>. Reasonable arguments could be made for a greater or lesser deduction, but 10% is the most reasonable number in the opinion of the undersigned.

The reduction yields a total attorney time of approximately 600 compensable hours. Those hours multiplied times the $215 hourly rate produces a lodestar fee of $129,000. When the 10 hours of paralegal time at $75 per hour is added, the total lodestar is $129,750.

**Adjustment of the Lodestar Fee**

The next step is to consider whether the lodestar should be adjusted upward or downward, depending on the circumstances of the case and the factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). Many of the well known Johnson factors[1] were discussed above in consideration of the hourly rate. They included the novelty and complexity of the issues, the skill required to properly litigate the case, whether the case was undesirable, and the experience and ability of the attorney. To the extent those Johnson factors were subsumed in the lodestar, they are not to be reconsidered when determining whether an adjustment is required. Green v. Administrators of Tulane Educational Fund, 284 F.3d 642, 661 (5th Cir. 2002).

Plaintiff does not seek an enhancement of the lodestar, and Defendant has not urged a reduction. The relevant Johnson factors were considered above and are reflected in the original lodestar calculation. No adjustment, in either direction, is necessary or appropriate to result in a reasonable fee.

---

[1] The Johnson factors are: (1) the time and labor required to litigate the matter; (2) the novelty and complicatedness of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorney had to refuse other work to litigate the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) whether the client or case imposed time constraints; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) whether the case was "undesirable"; (11) the type of attorney-client relationship and whether the relationship was long-standing; and (12) awards made in similar cases.

**Expenses**

Plaintiff's fee motion briefly addresses costs and expenses, but Plaintiff states that she submitted her expenses in a separate Bill of Costs. The Clerk has now taxed those costs. Neither party has appealed that decision, and Plaintiff has not asked in her motion for an award of any expenses beyond those in the Bill of Costs. Thus, the court need not examine any cost or expense issues.

Accordingly;

**IT IS RECOMMENDED** that the Motion for Attorney Fees (Doc. 84) be **granted** and Defendant Scotty Hill be ordered to pay to Peggy Suzanne Powell $129,750 in attorney fees.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that

party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 22nd day of September, 2008.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE